## STATE ex rel. L. J. LALONDE v. THOMAS P. WHITE.[1]

July 9, 1915.

Nos. 19,412—(257).

**Intoxicating liquor — local option — town and village.**
>    Under the local option statutes, if a town votes upon the license question and a village located within the town and not separated therefrom for all purposes has not voted thereon as an independent municipality, the vote of the town determines the question for all the territory of the town including that within the village; but, if the village itself as an independent municipality votes upon the question, the vote of the village determines

[1] Reported in 153 N. W. 602.

such question for the territory within the village regardless of the vote of the town.

Upon relation of L. J. Lalonde the district court for Koochiching county granted its writ of *habeas corpus* requiring Thomas B. White, as sheriff of that county, to show cause why relator was retained in custody. The respondent made return and upon a hearing the relator was remanded to custody, Stanton, J. From that order, relator appealed. Reversed.

*Marshall A. Spooner,* for appellant.

*Franz Jevne,* County Attorney, for respondent.

TAYLOR, C.

The town of Jameson and the village of Little Fork are both duly organized municipal corporations in the county of Koochiching. The village lies wholly within the town and still remains a part thereof for certain purposes, as the statutory proceedings by which the village may be entirely separated from the town for all purposes have not been taken. On March 9, 1915, the town held a town election and the village held a village election. The question whether license should be issued for the sale of intoxicating liquor within the town was duly submitted to the voters of the town, and they voted against license. The question whether license should be issued for the sale of intoxicating liquor within the village was duly submitted to the voters of the village, and they voted in favor of the license.

The relator resides in the village and for several years has conducted a saloon therein under license issued by the village. After the above election, he was arrested for selling liquor illegally, and was convicted and committed to the custody of the sheriff. Thereafter he sued out a writ of *habeas corpus* and was brought before the district court. That court remanded him to the custody of the sheriff, and he appealed to this court.

It is conceded that the relator had a license in due form issued by the proper village authorities; and the only question for determination is whether the vote of the town against license rendered

130 M.—22.

unlawful the sale of liquor within the village under a license issued by the village pursuant to a vote of the village.

The prosecution relies upon the case of State v. McKinnon, 126 Minn. 505, 148 N. W. 99, as holding that the vote of the town against license rendered the sale of liquor unlawful in all the territory within the town including the territory within the village. In that case as in this, the village lay wholly within the town and had not been separated from the town for all purposes, and the town had voted against license; but in that case the license question had not been submitted to or voted upon by the village as a separate municipality. In both cases, the voters residing within the village voted at town elections, while the voters residing within the town, but outside the village, did not vote at village elections.

The court held in the case cited that, as the village still remained a part of the town and had taken no independent action upon the license question as a separate municipality, the vote of "no license" by the town terminated and annulled all licenses issued by the village. In discussing the question the court remarked:

"The anomalous result reached comes because the village and the town were not separated. In the practical administration of the law many difficulties may arise unless the legislature amends the statute. These we are not required to anticipate. It seems clear that if a 'no license' vote makes a village dry, a 'for license' vote would make it wet. Whether in the first case supposed a village may vote for license, or in the latter case may vote against license, or in any way take advantage of the local option statute, we need not inquire. These matters will be met when the occasion presents them."

In the present case, we are confronted by the difficulty which the court foresaw would arise in case both the town and the village should take independent action upon the license question and should reach different results in respect thereto. Upon the same day, the town voted "dry" and the village voted "wet." The question is whether the village, being a part of the town, is controlled by the vote of the town; or whether, having determined the question for itself as a separate municipality, it is controlled by the result of its

own vote. This question must be determined by considering the purpose and effect of the various local option statutes enacted by the legislature. Originally the sale of liquor was lawful everywhere and its sale is still lawful except as restricted or prohibited by statute; but the lawmaking power may restrict or prohibit the sale thereof to any extent it shall deem proper for the promotion of the public welfare.

The first general law granting local option was passed in 1875 and conferred the power to vote upon the license question upon towns but not upon cities or villages. Chapter 112, p. 143, Laws 1875; Kleppe v. Gard, 109 Minn. 251, 123 N. W. 665. The licensing power as to towns was lodged exclusively in the board of county commissioners. This statute provided that, if a town voted against license, "the board of county commissioners shall grant no license in said township." This is the only prohibition contained in the statute. It merely limited the power of the county commissioners and did not apply to villages, for the village authorities were given the exclusive right to grant licenses therein. Chapter 139, § 13, p. 174, Laws 1875. In 1885 the legislature passed a law conferring upon villages the power to vote upon the license question. This statute provided:

"The legal voters of any incorporated village shall have the power and authority to vote upon and determine for themselves, the question whether license for the sale of intoxicating liquors as a beverage shall be granted by the council of said village or not."

It further provided that if the returns from the election "show that a majority of the votes cast at such election on said question shall be 'against license,' no license for the sale of intoxicating liquors shall be granted by the authorities of such village, except for medicinal or mechanical purposes, but if such returns show a majority of the votes cast at such election, on said question, shall be 'in favor of license,' then the village council may grant license to any suitable person of lawful age for the sale of intoxicating liquor." Chapter 145, § 48, p. 169, Laws 1885.

This statute unequivocally granted to villages the power to settle the license question for themselves regardless of the action of any

other municipality. It necessarily applied to villages which were a part of the towns in which they were located, for at that time all villages, at least all organized under the general law, remained a part of such towns. There was no statute then in existence under which a village could become separated from the town for all purposes; that statute was not enacted until several years later. It necessarily follows that the fact that the village still remained a part of the town for town purposes did not clothe the town with power to nullify the action taken by the village under the power conferred by the village local option statute. Both the town local option statute and the village local option statute remained substantially unchanged until the enactment of the revised laws of 1905. In this revision the two statutes were combined and the local option provision thereof put in the following form:

"The clerk of any town or incorporated village, on the petition of ten legal voters thereof, filed with him at least twenty days before the annual town meeting, or annual or charter election, shall give notice, at the same time and in the same manner as the notice of such meeting or election, that the question of license will be submitted at such meeting or election. Said question shall be voted on by ballot, and the result thereof certified by the town clerk to the county auditor, and by the municipal clerk filed in his office. Such vote shall remain in force until reversed at a subsequent election or town meeting at which the question of license is again in like manner submitted." R. L. 1905, § 1528 (G. S. 1913, § 3128).

Section 1533 of the revised laws (G. S. 1913, § 3142) prohibited the sale of intoxicating liquor "in any town or municipality in which a majority of the votes at the last election at which the question of license was voted upon shall not have been in favor of license."

The revised laws grant the power to determine the license question to both the town and the village. In view of the history of the legislation, it cannot be held that the action of the village is any less potent where it still remains a part of the town for certain purposes, than where it has been separated from the town for all purposes. The power to determine the license question for themselves conferred

upon villages by the original act clearly made such determination controlling and final within the territory of the village, regardless of the action taken by the town. The change in the statutes made by the revised laws does not purport to give to the town the power to overrule or nullify the action of the village, nor to limit the authority of the village to those cases only in which the town has failed to act. In view of the plenary power possessed by the village prior to the revision, and of the rules which require such revisions to be construed in the light of, and so as to give effect so far as may be to, the previously existing statutes embodied in the revision, we are constrained to hold that, where the village votes upon and determines the question for itself in the manner provided by statute, such determination is controlling and conclusive as to the territory within the village, whether it does or does not accord with the action taken by the town. In other words, the vote of the town settles the question for the territory within the village in those cases only in which the village itself does not vote upon the question as an independent municipality; but, in those cases in which the village itself votes upon the question as an independent municipality, such vote settles the question for the territory within the village regardless of the vote taken by the town. The county option statute recently enacted [1] establishes a different rule in case a county votes "no license," but has no bearing upon the present case.

The village of Little Fork having voted in favor of license had authority to issue the license in controversy to the relator, and his sales thereunder were lawful so long as he transgressed no restrictions placed upon the traffic. It follows that the conviction cannot be sustained. The order appealed from is reversed and the case remanded with instructions to discharge the relator.

[1] [Laws 1915, p. 24, c. 23]